UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------------

MAYNARD MUNROE,

                         Plaintiff,

          v.

SPECIALIZED LOAN SERVICING LLC and
BANK OF NEW YORK, *as Trustee for the*
*Certificate Holders of CWMBS, Inc., CIL Mortgage*
*Pass-Through Trust 2005-04, Mortgage Pass-*
*Through Certificate Series 2005-04*,


                         Defendants.

---------------------------------------------------------------

**MEMORANDUM & ORDER**
14-CV-1883 (MKB) (LB)

MARGO K. BRODIE, United States District Judge:

On March 24, 2014, Plaintiff, proceeding *pro se*, commenced the above-captioned action

against Specialized Loan Servicing LLC ("SLS") and the Bank of New York ("BNY"), as

Trustee for the Certificate Holders of CWMBS, Inc., CIL Mortgage Pass-Through Trust 2005-04

Mortgage Pass-Through Certificates Series 2005-4, alleging that Defendants violated the Fair

Credit Reporting Act, 15 U.S.C. § 1681 (the "FCRA"), and the Fair Debt Collection Practices

Act, 15 U.S.C. §§ 1692–1692p (the "FDCPA"), and asserting claims for invasion of privacy and

negligent hiring and supervision in violation of New York State law, and for unconscionable and

deceptive trade practices in violation of New York City law. (Compl. ¶¶ 16–47, Docket Entry

No. 1.) On March 27, 2015, Plaintiff moved for summary judgment as to all claims. (Pl. Mot.

for Summ. J. ("Pl. Mot."), Docket Entry No. 26.) On May 18, 2015, Defendants cross-moved

for summary judgment as to all claims. (Defs. Cross-Mot. for Summ. J. ("Defs. Mot."), Docket

Entry No. 28.) On October 6, 2015, the Court referred the motions to Magistrate Judge Lois

Bloom for a report and recommendation.[1]  (Order dated Oct. 6, 2015.)  On January 21, 2016,

Judge Bloom issued a report and recommendation (the "R&R"), recommending that the Court

deny Plaintiff's motion for summary judgment and grant Defendants' cross-motion for summary

judgment, dismissing the Complaint in its entirety.  (R&R 21, Docket Entry No. 37.)  On

February 17, 2016, Plaintiff timely filed objections to the R&R.  (Pl. Rejection and Denial of

Magistrate's R&R ("Pl. Obj."), Docket Entry No. 39.)  For the reasons set forth below, the Court

adopts Judge Bloom's R&R in its entirety.

## I.   Background

In December of 2004, Plaintiff executed a promissory note for $130,000 payable to

Countrywide Home Loans, Inc. ("Countrywide") and secured by a mortgage (the "Mortgage")

on real property located at 90-38 218th Street, Queens Village, New York 11428.[2]  (Pl. Aff. ¶ 2;

Defs. 56.1 ¶ 2; Ward Aff. 2; Mortgage Note, annexed to Manfro Decl. as Ex. A.)  Plaintiff

stopped making payments on the mortgage sometime in 2011.  (Defs. 56.1 ¶ 3; Dep. of M.

---

[1]   On October 14, 2015, Judge Bloom issued an Order noting that Defendants failed to provide Plaintiff with the notice required under Local Civil Rule 56.2 applicable to *pro se* litigants opposing motions for summary judgment.  (Docket Entry No. 35.)  In the Order, Judge Bloom provided Plaintiff with the requisite notice, and granted Plaintiff additional time to submit supplemental briefing on the motion for summary judgment.  (*Id.*)  On October 27, 2015, Plaintiff filed a supplemental brief in support of his motion for summary judgment.  (Pl. Suppl. Brief in Supp. of Summ. J. ("Pl. Suppl. Br."), Docket Entry No. 36.)

[2]   The Court draws these facts from Defendants' submission pursuant to Local Rule 56.1 (Defs. Statement of Material Uncontested Facts Pursuant to Local R. 56.1 ("Defs. 56.1"), Docket Entry No. 29-1), Plaintiff's sworn affidavit submitted "pursuant to Rule 56 of the Federal Rules of Civil Procedure," (Pl. Aff. in Support of Pl. Mot. ("Pl. Aff."), Docket Entry No. 34), and the documentary evidence submitted to the Court in support of Defendants' motion, (Defs. Exs. A–O annexed to the Decl. of J. Manfro in Supp. of Defs. Mot. ("Manfro Decl."), Docket Entry No. 29; Pl. Exs. A–F, annexed to Pl. Mot., Docket Entry No. 26.; Aff. of M. Ward in Supp. of Defs. Mot. ("Ward Aff."), Docket Entry No. 29-2).  Plaintiff did not file a Statement of Undisputed Facts pursuant to Local Rule 56.1 or a Counter-Statement of Undisputed Facts in response to Defendants' submission.

Munroe ("Pl. Dep.") 20:13–17, 32:20–33:3, annexed to Manfro Decl. as Ex. N.) Plaintiff

disputes that he defaulted on the Mortgage and that there was any mortgage debt because,

according to Plaintiff, he had previously "timely and properly rescinded the transaction" on

January 1, 2005.[3] (Pl. Aff. ¶ 3.)

On June 4, 2011, Mortgage Electronic Registration Systems, Inc. ("MERS"), as nominee

for Countrywide, assigned the mortgage "in default" to BNY. (Defs. 56.1 ¶¶ 1–2; Pl. Aff. ¶ 4;

Ward Aff. 2; Recording and Endorsement of Mortgage Assignment (the "Mortgage

Assignment"), annexed to Manfro Decl. as Ex. B.) In January of 2011, notices of default were

sent to Plaintiff and, on October 7, 2011, BNY commenced a residential mortgage foreclosure

action in New York Supreme Court, Queens County (the "Queens Foreclosure Action"). (Defs.

56.1 ¶ 4; Pl. Aff. ¶¶ 6, 8.) To "set-off" the Mortgage debt, Plaintiff submitted a check in the

amount of $124,188.46 to Bank of America, and a second check to Defendant SLS in the amount

of $22,031.29. (Pl. Dep. 36:11–18, 37:4–19, 38:3–41:4; Defs. 56.1 ¶ 5.) These checks,

however, were intentionally written on closed bank accounts, and therefore could not be

exchanged for cash or otherwise deposited. (Pl. Dep. 38:3–39:4, 39:12–22; Defs. 56.1 ¶ 5.)

According to Plaintiff, although the checks could not "be cashed," they were "a setoff," which

"balanc[ed] out the account." (Pl. Dep. 39:18–40:2; Defs. 56.1 ¶ 5.) After tendering these

checks, Plaintiff filed a motion seeking satisfaction of the mortgage in the Queens Foreclosure

Action. (Pl. Aff. ¶ 9; Pl. Dep. 34:11–20; Order dated Oct. 4, 2012 ("Oct. 2012 Order"), annexed

to Manfro Decl. as Ex. O.) The New York Supreme Court, Queens County, denied this motion.

(Pl. Aff. ¶ 9; Pl. Dep. 34:11–20; Oct. 2012 Order at 2.)

---

[3] The Court understands Plaintiff to be stating that he rescinded the Mortgage. (Pl. Aff. ¶ 3.) However, Plaintiff presents no evidence of a rescission other than the statement in the affidavit submitted in support of his motion.

In a letter dated October 12, 2012, Bank of America advised Plaintiff that the servicing of the Mortgage would be transferred to SLS. (Letters dated Oct. 12, 2012 and Nov. 9, 2012 (the "Transfer Letters"), annexed to Manfro Decl. as Ex. E.) On November 9, 2012, SLS obtained the servicing rights for the Mortgage. (*Id.*; Ward Aff. 2–3; Pl. Aff. ¶ 10.) Plaintiff received a letter, also dated November 9, 2012, advising him that the transfer of the ownership and servicing rights of the Mortgage to SLS had been completed. (Pl. Aff. ¶ 10.) Thereafter, SLS sent Plaintiff a Validation of Debt notice by certified mail dated November 11, 2012 (the "Validation Notice"). (Letter dated Nov. 11, 2012, annexed to Manfro Decl. as Ex. F.)

On or about February 13, 2013, Plaintiff sent Defendants a notice titled "Notice of Dispute; Demand for Validation and Proof of Claim" regarding the mortgage debt (the "Notice of Dispute"), which was received by SLS on February 13, 2013. (Pl. Aff. ¶ 11; Correspondence annexed to Mafro Decl. as Ex. G ("Defs. Ex. G.") 2–4.[4]) On February 15, 2013, SLS also received a letter from Plaintiff seeking validation of the mortgage debt. (Ward Aff. 3; Defs. Ex. G 5–7.) The Notice of Dispute stated that "A[ll] Correspondence" should be sent to "Abdul Wahid." (Defs. Ex. G 2.) In a letter dated February 21, 2013, and addressed to Abdul Wahid, SLS responded to Plaintiff's Notice of Dispute, and enclosed copies of the promissory note, mortgage, signature affidavit and payment transaction codes. (Pl. Aff. ¶ 11; Ward Aff. 3; Defs. Ex. G 8–14.) Plaintiff also filed a "Consumer Notice of Dispute" in the pending foreclosure action, demanding validation of the mortgage debt pursuant to the FDCPA. (Pl. Aff. ¶ 12.)

---

[4] Defendants' Exhibit G is a compilation of documents reflecting communications between Plaintiff and SLS. (Defs. Ex. G.) Because the documents are not separately paginated or bates stamped, the Court refers to the page numbers assigned to Defendants' Exhibit G by the Court's Electronic Filing System.

On January 26, 2014, Plaintiff filed a dispute with the credit reporting agency, Experian, requesting verification of the mortgage debt. (*Id.* ¶ 13.) That day, SLS also received a notice of dispute about the mortgage from Experian. (Ward Aff. 4.) According to Defendants, the dispute with Experian was based on Plaintiff's assertion that the mortgage debt had been settled with the prior account holder. (*Id.* at 5.) On January 29, 2014, after reviewing the mortgage debt, SLS responded to Experian stating that SLS' investigation verified the amount of the debt and its accuracy. (*Id.*; Pl. Aff. ¶ 13.)

## II. Discussion

### a. Standards of review

#### i. Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party submits a timely objection to a report and recommendation, the district court reviews the parts of the report and recommendation to which the party objected under a *de novo* standard of review. *Id.*; *see also United States v. Romano*, 794 F.3d 317, 340 (2d Cir. 2015). The district court may adopt those portions of the recommended ruling to which no timely objections have been made, provided no clear error is apparent from the face of the record. *John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015). The clearly erroneous standard also applies when a party makes only conclusory or general objections, or simply reiterates its original arguments. *Chime v. Peak Sec. Plus, Inc.*, --- F. Supp. 3d ---, ---, 2015 WL 5773951, at *1 (E.D.N.Y. Sept. 29, 2015) ("General or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." (citation

omitted)); *see also DePrima v. City of N.Y. Dep't of Educ.*, No. 12-CV-3626, 2014 WL 1155282, at \*3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii. Summary judgment

Summary judgment is proper only when, construing the evidence in the light most favorable to the non-movant, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015); *Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 843 (2d Cir. 2013); *Kwong v. Bloomberg*, 723 F.3d 160, 164–65 (2d Cir. 2013). The role of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Cioffi v. Averill Park Cent. Sch. Dist. Bd. of Educ.*, 444 F.3d 158, 162 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). A genuine issue of fact exists when there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The "mere existence of a scintilla of evidence" is not sufficient to defeat summary judgment. *Id.* The court's function is to decide "whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).

### b. Unopposed recommendations

Plaintiff did not object to Judge Bloom's recommendation that the Court grant summary judgment as to his (1) FCRA claims, (2) New York State law claims for invasion of privacy and negligent hiring and supervision, and (3) New York City law claims for unconscionable and deceptive trade practices. (R&R 18–20.) The Court has reviewed the unopposed portions of the R&R and, finding no clear error, the Court adopts these recommendations pursuant to 28 U.S.C.

§ 636(b)(1). Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claims for violations of the FCRA, invasion of privacy, negligent hiring and supervision, and unconscionable and deceptive trade practices.

### c. Plaintiff's objections

Plaintiff objects to Judge Bloom's recommendation that the Court grant Defendants' motion for summary judgment as to his FDCPA claim. Plaintiff appears to raise two primary objections to the R&R. First, Plaintiff asserts that the R&R erroneously held that BNY did not qualify as a debt collector under the FDCPA. (Pl. Obj. 5, 7.) Second, Plaintiff argues that the R&R improperly held that Plaintiff did not timely dispute the validity of the mortgage debt, which should have triggered SLS' verification and validation obligations under the FDCPA. (*Id.* at 6.) For the reasons discussed below, the Court rejects these objections and adopts the R&R in its entirety. The Court therefore denies Plaintiff's motion for summary judgment and grants Defendants' cross-motion for summary judgment.

### d. FDCPA Claims

"Congress enacted the FDCPA 'to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" *Vincent v. The Money Store*, 736 F.3d 88, 96 (2d Cir. 2013) (quoting 15 U.S.C. § 1692(e)); *see also Benzemann v. Citibank, N.A.*, 806 F.3d 98, 100 (2d Cir. 2015) ("The purpose of the FDCPA is to 'eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses.'" (quoting *Kropelnicki v. Siegel*, 290 F.3d

118, 127 (2d Cir. 2002))). "To accomplish these goals, the FDCPA creates a private right of action for debtors who have been harmed by abusive debt collection practices." *Benzemann*, 806 F.3d at 100 (citing 15 U.S.C. § 1692k). Importantly, "[t]he relevant provisions of the FDCPA apply only to the activities of a 'debt collector,'" *Schuh v. Druckman & Sinel, L.L.P.*, 602 F. Supp. 2d 454, 462 (S.D.N.Y. 2009) (citing 15 U.S.C. §§ 1692e, 1692f, 1692g), and "[a]s a general matter, creditors are not subject to the FDCPA," *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 235 (2d Cir. 1998).

To establish a violation under the FDCPA, "(1) the plaintiff must be a 'consumer' who allegedly owes the debt or a person who has been the object of efforts to collect a consumer debt, and (2) the defendant collecting the debt is considered a 'debt collector,' and (3) the defendant has engaged in any act or omission in violation of FDCPA requirements." *Polanco v. NCO Portfolio Mgmt., Inc.*, --- F. Supp. 3d ---, ---, 2015 WL 5637531, at *8–9 (S.D.N.Y. Sept. 23, 2015) (quoting *Plummer v. Atl. Credit & Fin., Inc.*, 66 F. Supp. 3d 484, 488 (S.D.N.Y. 2014)); *see also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2d Cir. 2008) ("[The FDCPA] grants a private right of action to a consumer who receives a communication that violates the Act.").

The R&R recommended dismissal of Plaintiff's FDCPA claims after finding them insufficient as a matter of law. (R&R 12–18.) Construing Plaintiff's objections liberally, he objects to two aspects of the R&R: (1) Judge Bloom's finding that BNY did not qualify as a "debt collector" under the FDCPA, and (2) Judge Bloom's finding that, although SLS did qualify as a debt collector, there was no evidence establishing the alleged violations of the FDCPA. (*Id.* at 5, 7, 12–18.) The Court addresses these objections in turn.

### i. Claims against BNY

The R&R addressed the status of BNY and SLS under the FDCPA, and concluded that while SLS qualified as a debt collector under the FDCPA, BNY was merely a creditor, and the owner of the debt at issue, and was "not a debt collector within the meaning of the FDCPA." (R&R 11–12.)  Plaintiff objects to the R&R's finding that BNY was not a debt collector under the FDCPA, arguing, as he did in his original motion, that BNY qualifies as a "debt collector" under the FDCPA because it purchased a debt, the Mortgage, that was in default at the time of the purchase.[5]  (Pl. Obj. 5, 7; Pl. Mot. 5; Pl. Suppl. Br. 4.)

As noted above, "[t]he relevant provisions of the FDCPA apply only to the activities of a 'debt collector.'"  *Schuh*, 602 F. Supp. 2d at 462 (citations omitted).  The statute defines "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due [to] another."  15 U.S.C. § 1692a(6).  However, a "debt collector" does not include "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  *Id.* § 1692a(6)(F)(iii).

Although debt collectors are subject to the FDCPA, creditors generally are not, *Maguire*,

---

[5]  Plaintiff appears to object to Judge Bloom's finding that Plaintiff's debt was assigned to BNY, stating that the "proof and admissible evidence" on which Judge Bloom relied to find that such an assignment occurred is "unknown to Plaintiff."  (Pl. Obj. 5.)  However, sworn affidavits submitted by both Plaintiff and Defendants attest to the fact of the assignment from MERS to BNY on June 4, 2011.  (Pl. Aff. ¶ 4 ("On June 04, 2011, [MERS] assigned the mortgage in default to [BNY] . . . ."); Ward Aff. 2 ("By Assignment of mortgage dated June 4, 2011, MERS assigned the loan to BNY.  The Assignment of Mortgage was recorded with the New York City Register on June 20, 2011 . . . ."); Mortgage Assignment.)  Accordingly, Judge Bloom properly concluded that neither party disputed the mortgage's assignment to BNY.

147 F.3d at 235, as the FDCPA "limits its reach to those collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own debts,"[6] *1077 Madison St. LLC v. March*, No. 14-CV-4253, 2015 WL 6455145, at *3 (E.D.N.Y. Oct. 26, 2015) (citing *Maguire*, 147 F.3d at 235). In addition, "[a] creditor that is not itself a debt collector is not vicariously liable for the actions of a debt collector it has engaged to collect its debts." *Burns v. Bank of Am.*, 655 F. Supp. 2d 240, 255 (S.D.N.Y. 2008) (quoting *Doherty v. Citibank (South Dakota) N.A.*, 375 F. Supp. 2d 158, 162 (E.D.N.Y. 2005)), *aff'd*, 360 F. App'x 255 (2d Cir. 2010). The FDCPA defines a "creditor" as "any person who offers or extends credit creating a debt or to whom a debt is owed." 15 U.S.C. § 1692a(4). Where an entity is assigned "a debt in default solely for the purpose of facilitating collection of such debt *for another*," it falls outside the definition of a "creditor" under the FDCPA. *Id.* (emphasis added). However, even where an entity acquires a defaulted debt, it is not a debt collector where it does not engage in collection activities or seek to collect on its own behalf rather than "for another." *See Izmirligil v. Bank of New York Mellon*, No. 11-CV-5591, 2013 WL 1345370, at *4 (E.D.N.Y. Apr. 2, 2013) ("Plaintiff does not allege, nor does he argue in opposition that he can allege, that either BNYM's 'principal purpose' is the collection of debts or that BNYM 'regularly collects' debts owed another. Rather, plaintiff alleges that BNYM is a 'debt collector' simply 'because [BNYM] took an assignment of the alleged debt while the debt was allegedly in default.'"); *Pereira v. Ocwen Loan Servicing, LLC*, No. 11-CV-2672, 2012 WL 1379340, at *3 (E.D.N.Y. Mar. 12, 2012) ("[I]f the note and mortgage were assigned to Ocwen, then [Ocwen] is not a debt

---

[6] The general rule that the FDCPA is inapplicable to creditors does not apply where "in the process of collecting its own debts," the creditor "used any name other than its own, thereby indicating that a third person is collecting or attempting to collect such debts." *Vincent v. The Money Store*, 736 F.3d 88, 97 (2d Cir. 2013) (internal quotation marks and brackets omitted) (quoting 15 U.S.C. § 1692a(6)).

collector as defined by the FDCPA unless the transfer of the debt in default was solely for the purpose of facilitating collection of the debt for another."), *report and recommendation adopted*, No. 11-CV-2672, 2012 WL 1381193 (E.D.N.Y. Apr. 18, 2012); *Burns*, 655 F. Supp. 2d at 254 (finding that the defendant was not a debt collector where "[t]he record show[ed] that [the defendant] 'sought to collect its own [$111,000.00] debt from [P]laintiff' relating to the Minnesota Property; [the defendant] '[was] in the business of, among other things, financing mortgages for home buyers'; and its 'principal business [was] not debt collection'") (fourth and fifth alterations in original).

Judge Bloom properly found that, although BNY was assigned a defaulted mortgage, it is a "creditor" not a "debt collector" under the FDCPA. (R&R 12–13.) While a creditor does not include an entity that is assigned defaulted debt in order to collect that debt for another, there is no evidence that BNY was assigned the defaulted mortgage for the purpose of collecting on behalf of an entity other than itself. (Assignment of Mortgage 2 (assigning BNY "all beneficial interest" and "all rights accrued or to accrue under said security instrument")); *see Book v. Mortgage Elec. Registration Sys.*, 608 F. Supp. 2d 277, 284 (D. Conn. 2009) ("[A]s a mortgage company, MERS was collecting a debt on its own behalf and thus cannot be fairly characterized as a "debt collector" subject to the FDCPA." (citations omitted)); *Burns*, 655 F. Supp. 2d at 254 ("The [FDCPA] is quite clear that it is directed at independent debt collectors and not creditors attempting to collect on their own debts." (citations and internal quotation marks omitted)); *Somin v. Total Cmty. Mgmt. Corp.*, 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007) ("There is no question that any activity undertaken by the [mortgagee] was on its own account. As such, it is not a debt collector under the FDCPA."); *see also Farber v. NP Funding II L.P.*, No. 96-CV-4322, 1997 WL 913335, at *4 (E.D.N.Y. Dec. 9, 1997) ("[T]he purchase of defaulted mortgages

is not the equivalent of debt collection.").  Accordingly, while Plaintiff correctly notes that, in certain circumstances, an entity's purchase of a debt in default can make that entity a debt collector, this conclusion is inapplicable where there is no evidence that the entity is principally involved in debt collection on behalf of another.  *See Izmirligil*, 2013 WL 1345370, at *4 ("Plaintiff does not allege, nor does he argue in opposition that he can allege, that either BNYM's 'principal purpose' is the collection of debts or that BNYM 'regularly collects' debts owed another.  Rather, plaintiff alleges that BNYM is a 'debt collector' simply 'because [BNYM] took an assignment of the alleged debt while the debt was allegedly in default.'"); *Carlson v. Long Island Jewish Med. Ctr.*, 378 F. Supp. 2d 128, 130–31 (E.D.N.Y. 2005) ("[B]y its terms, the FDCPA limits its reach to those collecting the dues 'of another' and does not restrict the activities of creditors seeking to collect their own debts.").  Judge Bloom properly concluded that BNY does not qualify as a debt collector under the FDCPA and that Plaintiff's FDCPA claims against BNY fail as a matter of law.[7]

### ii. Claims pursuant to 15 U.S.C. § 1692g

Section 1692g of the FDCPA requires a debt collector to validate a consumer's debts, in certain circumstances.  15 U.S.C. § 1692g.  This section "was enacted to 'eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid.'"  *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 134 (2d Cir. 2010) (quoting S. Rep. No. 95-382, at 4 (1977)).  "Section 1692g(a) orders the debt collector to send a written notice, within five days of its initial communication with the consumer," containing various information about the debt and the consumer's rights.  *Jacobson*, 516 F.3d

---

[7] As discussed below in connection with Plaintiff's remaining FDCPA claims, even if BNY could qualify as a debt collector, Plaintiff has put forth no evidence from which a jury could find the FDCPA violations alleged by Plaintiff.

at 90 (citing 15 U.S.C. §§ 1692g(a)(1)–(2)).  Section 1692g(a) requires that the debt collector's written notice contain:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector; and (5) a statement that, upon the consumer's written request within the thirty-day period, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.

*Hooks v. Forman, Holt, Eliades & Ravin, LLC*, 717 F.3d 282, 284 (2d Cir. 2013) (quoting 15 U.S.C. § 1692g(a)).  As indicated by the required disclosures in section 1692g, a consumer has the right to dispute the debt to be collected within thirty days of receiving a notification of the debt owed.  15 U.S.C. § 1692g(a)(3)–(4).

A consumer is not always required to dispute a debt in writing.  15 U.S.C. §§ 1692g(a)(4)–(5), (b); *see also Hooks*, 717 F.3d at 286 (holding that while sections 1692g(a)(4)–(5) and 1692g(b) refer to a consumer's written dispute, no writing is required under section 1692g(a)(3)).  However, certain protections of the FDCPA require a consumer to file a written dispute within the validation period.  15 U.S.C. §§ 1692g(a)(4)–(5), 1692g(b).  Pursuant to section 1692g(b), "[i]f the consumer notifies the debt collector in writing within the thirty-day period . . . the debt collector shall cease collection of the debt, or any disputed portion thereof," until the debt collector verifies the debt "or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."  *Id.* § 1692g(b); *see also Ellis*,

591 F.3d at 134–35. "[T]he recipient of a debt collection letter covered by the FDCPA validly invokes the right to have the debt verified whenever she *mails* a notice of dispute *within thirty days of receiving* a communication from the debt collector." *Jacobson*, 516 F.3d at 95. The thirty-day validation period during which a consumer must dispute a particular debt "is not a 'grace period,'" and "in the absence of a dispute notice, the debt collector is allowed to demand immediate payment and to continue collection activity." *Ellis*, 591 F.3d at 135 (quoting *Jacobson*, 516 F.3d at 89).

Although a consumer's dispute may trigger the debt collector's obligation to verify the debt, "the Second Circuit has not spoken authoritatively on the issue of what constitutes 'verification of the debt' for purposes of complying with the FDCPA." *Ritter v. Cohen & Slamowitz, LLP*, 118 F. Supp. 3d 497, 500 (E.D.N.Y. 2015). While the Second Circuit has not addressed the issue, district courts within this Circuit have assessed the sufficiency of a debt collector's verification, finding that "verification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed." *Blanc v. Palisades Collection, LLP*, No. 06-CV-1626, 2007 WL 3254381, at *7 (S.D.N.Y. Nov. 1, 2007) (quoting *Clark v. Capital Credit & Collection Servs.*, 460 F.3d 1162, 1173–74 (9th Cir. 2006)); *see also Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 370 (D. Conn. 2012) ("Verification of a debt requires only that the debt collector obtain a written statement that 'the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt.'" (quoting *Bascom v. Dubin*, No. 03-CV-6160, 2007 WL 210387, at *3 (W.D.N.Y. Jan. 25, 2007))); *Stonehart v. Rosenthal*, No. 01-CV-651, 2001 WL 910771, at *6 (S.D.N.Y. Aug. 13, 2001) (same) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394, 406 (4th Cir. 1998)).

Several district courts have applied this standard to find debt collector's verification letters sufficient under section 1692g, where they provide information about the debt amount owed. *See Ritter*, 118 F. Supp. 3d at 502 (finding debt collector sufficiently verified the debt where, in response to the plaintiff's dispute, the debt collector "provided credit card statements covering a period of two years," which "while not providing an itemization of charges, clearly contained the [p]laintiff's name and home address, and included a charge-off in the amount of $918.78 — the amount the [debt collector] claim[ed] [was] owed"); *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 410 (E.D.N.Y. 2012) (holding that the letter to borrower was sufficient to verify the loan under the FDCPA where the letter listed the entity that originated the mortgage loan and the entity that subsequently purchased the loan and also included "copies of the loan and mortgage documents," "the assignment agreement," and "a copy of the 'good-bye' letter" from the prior lender), *aff'd*, 529 F. App'x 45 (2d Cir. 2013).

### 1. Plaintiff failed to dispute the debt within the requisite thirty days

Plaintiff argues that the R&R erroneously concluded that he had a duty to dispute the defaulted mortgage debt within thirty days. (Pl. Obj. 9.) According to Plaintiff, the FDCPA does not impose such a burden on Plaintiff, and a consumer can dispute an alleged debt at any time. (*Id.* at 10.) Plaintiff also argues that the monthly dunning letters from SLS were proper bases for Plaintiff to dispute "even monthly." (*Id.*)

Contrary to Plaintiff's arguments, Judge Bloom properly held that Plaintiff failed to dispute the debt within thirty days of the initial communication. SLS' November 9, 2012 letter advised Plaintiff that the servicing rights had been transferred, and was followed by the November 2012 Validation Letter. (Transfer Letters; Validation Letter.) As Judge Bloom noted, while it is unclear when exactly SLS sent the November 2012 Validation Letter to Plaintiff,

Plaintiff concedes that he received the letter "on or about November 9, 2012." (R&R 15; Pl. Aff. ¶ 10.) Despite the fact that Plaintiff received that notice on November 9, 2012, as he concedes, Plaintiff did not send his Notice of Dispute until "on or about February 13, 2013."[8] (Pl. Aff. ¶ 11; Notice of Dispute.) Therefore, Plaintiff disputed the debt more than thirty days after receiving the November 2012 Validation Letter. Because Plaintiff failed to dispute the validity of the defaulted mortgage debt within the applicable thirty-day period, Defendants were entitled to assume the debt was valid, and Plaintiff's section 1692g claim fails as a matter of law. *See Ellis*, 591 F.3d at 134 ("[T]he consumer has thirty days to mail a notice to the debt collector disputing the debt or requesting the name and address of the original creditor." (citing *Jacobson*, 516 F.3d at 95)); *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *5 (E.D.N.Y. Dec. 15, 2010) ("Plaintiff's Section 1692g(b) claims fail because, although he alleges that he repeatedly requested that the Collection Defendants verify the questioned debts, he does *not* allege that he made any of these requests within the thirty day time window that Section 1692(b) provides."); *Lindbergh v. Transworld Sys., Inc.*, 846 F. Supp. 175, 179 (D. Conn. 1994) ("[T]he plaintiff has not offered any explanation as to why he did not dispute his debt and demand verification in the manner envisaged by Section 1692g or why the defendant should not have assumed that the debt was valid by dint of the plaintiff's failure to respond in a timely fashion to its first communication."); *see also Richmond v. Higgins*, 435 F.3d 825, 829 (8th Cir. 2006) ("[The plaintiff] did not dispute the debt amount within thirty days of receipt of the letter. In fact, [the defendant] did not receive notice that the debt was disputed until almost six months later, on April 1, 2003. Accordingly, [the defendant] was permitted under the FDCPA to assume that the

---

[8] SLS marked the Notice of Dispute as "received" on February 13, 2013. (Notice of Dispute.)

debt was valid.").  Accordingly, Plaintiff's section 1629g claim fails as a matter of law because, on the undisputed facts, there was no violation of that section of the FDCPA.

Plaintiff argues incorrectly that, because he continued to receive "dunning notices" for the mortgage debt, he was entitled to continuously seek verification of the mortgage debt beyond the thirty-day period.  (Pl. Obj. 9–10.)  Plaintiff asserts that every dunning notice from SLS entitled him to seek verification of the debt, but the text of the FDCPA directly contradicts that argument by providing consumers like Plaintiff the opportunity to dispute and seek verification after an *initial* communication.  15 U.S.C. § 1629g; *see also Oliver v. U.S. Bancorp*, No. 14-CV-8948, 2015 WL 4111908, at *4 (S.D.N.Y. July 8, 2015) ("Application of both [section] 1692g(a) and (b) depend on the existence of an 'initial communication' from the debt collector to the consumer.").  Because the thirty-day period following the initial communication is the relevant time period for section 1692g(a) and (b) claims, the Court rejects Plaintiff's argument and finds that Judge Bloom properly concluded that Plaintiff failed to object to the debt within the thirty days provided by the FDCPA.  *See Wiener v. Bloomfield*, 901 F. Supp. 771, 775 (S.D.N.Y. 1995) (finding debt collector's letter to debtor did not violate the prohibitions of section 1692g because the letter "was sent after the period expired.").

Accordingly, the Court rejects Plaintiff's objections to Judge Bloom's recommendation that his section 1629g claims be dismissed.  Judge Bloom properly considered the undisputed facts of SLS' initial communication and Plaintiff's failure to dispute the debt within thirty days.  As a result, Plaintiff's section 1629g claims fail as a matter of law.  In addition, as discussed below, even if the Court could find that Plaintiff disputed the debt in a timely fashion, SLS properly verified the debt as required by the FDCPA.

## 2. SLS' validation of the defaulted mortgage debt

Plaintiff appears to assert that, in the R&R, Judge Bloom improperly verified and validated the disputed debt. (Pl. Obj. 6.) According to Plaintiff, "[w]hether or not the alleged debt is valid is not a decision a magistrate can make 'sua sponte.'" (*Id.*) After finding that Plaintiff failed to dispute the debt within the requisite thirty-day period, Judge Bloom considered SLS' response to Plaintiff's February letters disputing the validity of the debt, and found that SLS satisfied its obligation to verify a disputed debt under the FDCPA. (R&R 16–17.) In light of the undisputed facts, Judge Bloom properly held that Plaintiff's section 1629g claim fails as a matter of law.

After receiving Plaintiff's February 2012 letters disputing the validity of the mortgage debt, SLS sent Plaintiff a letter that included copies of the promissory note, deed, and name and signature affidavit, along with SLS' payment history information. (Defs. Ex. G. 8; Ward Aff. 3.) Plaintiff admits that on or about February 23, 2012, he received these documents from SLS. (Pl. Aff. ¶ 11.) In addition, SLS provided Plaintiff with the contact information for Countrywide Home Loans, Inc. as "the original and current holder of [Plaintiff's] mortgage loan." (Defs. Ex. G 8.) Collectively, these documents made it clear to Plaintiff that "the amount being demanded is what the creditor is claiming is owed," *Blanc, LLP*, 2007 WL 3254381, at *7, and they were "sufficient to verify the loan for purposes of the FDCPA," *Hawkins-El*, 891 F. Supp. 2d at 410.

In objecting to the R&R, Plaintiff continues to assert that the debt is not valid and that Judge Bloom improperly found the debt to be valid. (Pl. Obj. 6.) In recommending that the Court grant Defendants' motion for summary judgment, however, Judge Bloom did not verify Plaintiff's mortgage debt *sua sponte*. Instead, Judge Bloom reviewed the undisputed record and

properly concluded that Defendants were entitled to judgment as a matter of law.  At this stage, "[t]o survive summary judgment, [Plaintiff] must merely show that reasonable minds could differ as to the import of the evidence . . . in the record."  *Cortes v. MTA N.Y.C. Transit*, 802 F.3d 226, 230 (2d Cir. 2015) (citation and internal quotation marks omitted).  Here, Plaintiff raised no dispute of material fact concerning SLS' verification of the debt.  As Judge Bloom noted, Plaintiff agreed that after he sent his dispute letters to SLS in early February of 2013, "on or about February 23, 2013, Plaintiff received copies of [the] Promissory[] Note, [m]ortgage, [s]ignature [a]ffidavit, and [p]ayment transaction codes."  (R&R 3 (citing Pl. Aff. ¶ 11; Ward Aff. 3; Defs. Ex. G).)  Those documents were sufficient to satisfy Defendants' verification obligations under the FDCPA.  *See Blanc*, 2007 WL 3254381, at *7 ("[V]erification of a debt involves nothing more than the debt collector confirming in writing that the amount being demanded is what the creditor is claiming is owed."); *Derisme*, 880 F. Supp. 2d at 370 ("Verification of a debt requires only that the debt collector obtain a written statement that 'the amount being demanded is what the creditor is claiming is owed; the debt collector is not required to keep detailed files of the alleged debt.'").  Therefore, Plaintiff's section 1629g claim fails as a matter of law.

Although Plaintiff continues to assert that the mortgage debt is invalid, this assertion is insufficient to preclude summary judgment, where Defendants have presented undisputed evidence that they complied with the FDCPA.  While Plaintiff asserts that he satisfied the mortgage debt, there is no evidence of such satisfaction in the record; indeed, there is undisputed evidence to the contrary.  As Plaintiff testified at his deposition, prior to SLS acquiring the servicing rights, Plaintiff tried to "set-off" his mortgage debt by submitting checks for $124,188.46 and $22,031.29 to Bank of America.  (Munroe Dep. 28:9–12; *id.* at 36:11; *id.* at

38:13–39:7.)  As Plaintiff admitted, these checks were written from bank accounts containing no funds to cover the checks.  (*Id.*)  It is also undisputed that during the state court foreclosure proceeding, Plaintiff's motion for satisfaction of the mortgage was denied.  (Defs. Ex. O.) Accordingly, there is no evidence in the record from which a jury could find that Plaintiff satisfied the mortgage debt, or that the mortgage debt that SLS was attempting to service was otherwise invalid.  As noted by the court in *Hawkins-El*, and cited by Judge Bloom, a "[p]laintiff cannot forestall collection efforts by repeating the same unsubstantiated assertions and thereby contend that the debt is 'disputed,'" because if he were "permitted to do so, debtors would be able to prevent collection permanently by sending letters, regardless of their merit, stating that the debt is in dispute." *Hawkins-El*, 891 F. Supp. 2d at 410.

In light of Plaintiff's failure to dispute the mortgage debt within thirty-days of the initial communication, and the undisputed facts showing that SLS nevertheless verified the mortgage debt, Plaintiff's section 1629g claims fail as a matter of law.

### iii.    New arguments presented in objecting to the R&R

Plaintiff asserts that by sending Plaintiff the verification of debt he requested, Defendants violated section 1692c of the FDCPA because "neither [D]efendant received prior consent to communicate with Plaintiff ." (Pl. Obj. 8.)  Plaintiff also appears to object to the R&R by arguing that it is "clear that [D]efendant debt collectors brought an action in state court under creditor laws and not an action as debt collectors," which violated the FDCPA.  (*Id.* at 7.)

"[I]t is well-established in this district and circuit that a district court generally will not consider new arguments raised for the first time in objections to a magistrate judge's report and recommendation that could have been raised before the magistrate but were not." *Charlot v. Ecolab, Inc.*, 97 F. Supp. 3d 40, 51 (E.D.N.Y. 2015) (collecting cases); *Spaulding v. N.Y.C.*

*Dep't of Educ.*, No. 12-CV-3041, 2015 WL 5560286, at *2 (E.D.N.Y. Sept. 21, 2015) (Courts "will not consider arguments, case law, and/or evidentiary material which could have been, but [were] not, presented to the magistrate judge in the first instance." (citations and internal quotation marks omitted)).  In addition, where "new factual allegation[s] [are] improperly raised for the first time on summary judgment," *Tomizawa v. ADT LLC*, No. 13-CV-6366, 2015 WL 5772106, at *30 (E.D.N.Y. Sept. 29, 2015), the Court need not consider them, *Dabney v. Christmas Tree Shops*, 958 F. Supp. 2d 439, 450 n.9 (S.D.N.Y. 2013) ("[C]ourts will not consider, on a motion for summary judgment, allegations that were not pled in the complaint and raised for the first time in opposition to a motion for summary judgment . . . ."), *aff'd sub nom. Dabney v. Bed Bath & Beyond*, 588 F. App'x 15 (2d Cir. 2014); *see Hickey v. State Univ. of N.Y. at Stony Brook Hosp.*, No. 10-CV-1282, 2012 WL 3064170, at *5 (E.D.N.Y. July 27, 2012) ("[T]he pleading requirements under the Federal Rules are relatively permissive, they do not entitle parties to manufacture claims, which were not pled, late into the litigation for the purpose of avoiding summary judgment." (quoting *N. States Power Co. v. Fed. Trans. Admin.*, 358 F.3d 1050, 1057 (8th Cir. 2004)).

Plaintiff's argument regarding Defendants' failure to obtain "prior consent to communicate" with him was neither presented to Judge Bloom nor pled in the Complaint. Accordingly, the Court rejects these arguments.  Even assuming that Plaintiff's Complaint, liberally construed, pled such a claim, he has presented no evidence from which a jury could find an FDCPA violation based on these allegations.  To the contrary, the record before the Court shows that SLS directly communicated with Abdul Wahid, the "notary acceptor" identified by Plaintiff as the person designated to receive all communication in his Notice of Dispute, and Steven Rabitz, the lawyer who requested the Satisfaction of Mortgage on Plaintiff's behalf in

March of 2013.  (Defs. Ex. H; Defs. Ex. I 118; Defs. Ex. J 132.)  Plaintiff does not dispute the authenticity of any of this evidence in the record.  Therefore, even if Plaintiff had timely asserted a claim for Defendants' alleged failure to obtain consent to communicate with Plaintiff, there is no evidence on which this claim could survive.

As to his argument regarding the state court foreclosure action being improperly filed, it appears that Plaintiff may be attempting to assert a claim under section 1692i of the FDCPA, which governs the proper venue for filing debt collection actions.  15 U.S.C. § 1692i.  Liberally construing Plaintiffs' complaint as pleading such a claim, it also fails.  "Section 1692i(a)(1) is a venue provision that requires a debt collector who brings a legal action against a consumer 'to enforce an interest in real property securing the consumer's obligation' to file the action in the judicial district where the property is located."  *Boyd v. J.E. Robert Co.*, No. 05-CV-2455, 2013 WL 5436969, at *11 n.9 (E.D.N.Y. Sept. 27, 2013) (quoting 15 U.S.C. § 1692i(a)(1)), *aff'd sub nom. Boyd v. J.E. Robert Co.*, 765 F.3d 123 (2d Cir. 2014).  By its terms, section 1692i applies to "debt collectors."  15 U.S.C. § 1692i(a)(1).  Here, BNY, not SLS, brought, and was a party to, the state foreclosure action.  (Defs. Ex. D.)  As discussed above, BNY does not qualify as a debt collector under the FDCPA.  Thus, to the extent Plaintiff is attempting to bring a belated 15 U.S.C. § 1692i claim, it fails as a matter of law.[9]

---

[9]  Construed differently, Plaintiff may be attempting to argue that based on some false or deceptive efforts in the foreclosure action, Defendants are liable under the FDCPA.  Like any section 1692i claim, however, this was not presented to Judge Bloom or alleged in the Complaint.  Nevertheless, it also fails.  The Second Circuit has not addressed whether instituting a foreclosure action constitutes debt collection under the FDCPA.  *See Boyd v. J.E. Robert Co.*, 765 F.3d 123, 125 n.3 (2d Cir. 2014) ("[W]e do not address the District Court's conclusion that the FDCPA does not apply to enforcement of security interests against property.").  While courts in this Circuit have found that such an action to enforce an interest in real property does not qualify as a debt collection activity, *see, e.g.*, *Carlin v. Davidson Fink LLP*, No. 13-CV-6062, 2015 WL 5794250, at *4 (E.D.N.Y. Sept. 30, 2015) ("Because it sought to foreclose on the

### III. Conclusion

For the foregoing reasons, the Court adopts Judge Bloom's R&R in its entirety. The Court denies Plaintiff's motion for summary judgment and grants Defendants' cross-motion for summary judgment. The Clerk of Court is directed to close this case.

SO ORDERED:

_____s/ MKB_____
MARGO K. BRODIE
United States District Judge

Dated: March 28, 2016
      Brooklyn, New York

---

property, Davidson Fink was not engaging in the collection of a debt as a matter of law."); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 311, 325 (D. Conn. 2012) (collecting cases), the Court need not resolve that legal question because, even if the Court could find that the foreclosure action constituted debt collection activity, Plaintiff has presented no evidence of Defendants' false or deceptive efforts to collect that debt.